United States District Court
Southern District of Texas
**ENTERED**
September 09, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| JANTRA PALMER, individually and as Next Friend of ALAN KERBER, deceased, | § § § | |
| Plaintiff, | § § | |
| vs. | § § | CIVIL ACTION NO. H-25-2326 |
| HARRIS COUNTY, | § § | |
| Defendant. | § § | |

**MEMORANDUM OPINION AND ORDER**

Jantra Palmer, individually and as next friend of Alan Kerber, deceased, sued Harris County under 42 U.S.C. § 1983 on behalf of herself and as the representative of Kerber's estate. (Docket Entry No. 2). Palmer alleges that Kerber died after Harris County Jail officials failed to properly classify him as a suicide risk and failed to observe and monitor him to prevent him from committing suicide. (*Id.*). The County moved to dismiss, arguing that Palmer failed to state a claim for relief under any theory of municipal liability. (Docket Entry No. 5). Palmer moved to strike the County's motion to dismiss. (Docket Entry No. 6). The County responded to the motion to strike, and Palmer filed a reply. (Docket Entry Nos. 10, 12). Palmer also filed a substantive response to the motion to dismiss, and the County filed a reply. (Docket Entry Nos. 9, 11). Having reviewed the lengthy amended complaint, the motions, the responses and replies, the record, and the law, the court denies Palmer's motion to strike, grants the County's motion to dismiss in part, and denies it in part. The reasons for these rulings are explained below.

**I. Background**

The amended complaint alleges that Kerber was admitted to the Harris County Jail on October 9, 2022. (Docket Entry No. 2, p. 13). Palmer alleges that upon admission, Kerber was

placed in a single quarantine cell rather than a high-risk cell. (*Id.*). She alleges that high-risk cells have suicide prevention methods in place and that the detainees in those cells are observed and monitored more frequently than other detainees. (*Id.*). The amended complaint contains no facts that could show that Jail officials knew or should have known that Kerber was a high-risk detainee at risk of engaging in self-harm.

On October 12, 2022, while alone in his cell, Kerber forced a tube of toothpaste down his throat. (*Id.*). Cameras in the cell recorded the event, but the detention officers assigned to actively monitor the video feed either were not doing so or watched Kerber's actions and deliberately failed to respond or render aid. (*Id.*). Three minutes later, Kerber collapsed to the floor near the toilet in his cell. (*Id.*). Five minutes later, detention officers entered the cell block where Kerber was housed, but none of them checked on Kerber despite reporting that they had done so. (*Id.* at 14). Almost an hour later, detention officers again entered Kerber's cell block, but none of them checked on Kerber despite reporting that they had done so. (*Id.*). No detention officer checked on Kerber until almost two hours after he had collapsed. (*Id.* at 13). Kerber was pronounced dead by a Jail physician shortly thereafter. (*Id.* at 14).

Palmer alleges that after Kerber's death, the Texas Commission on Jail Standards investigated and determined that the County did not have policies in place to ensure that detention officers were properly observing and monitoring detainees. (*Id.*). The Commission required the County to conduct additional training on proper observation and monitoring. (*Id.*). Palmer alleges that despite this requirement, Jail officials were still not conducting proper observations and monitoring more than a month after Kerber's death and the Commission's report. (*Id.*).

Palmer alleges that the failure to properly classify, observe, and monitor Kerber resulted in his death. (*Id.*). She also alleges that these failures were due to overcrowding or understaffing at the Jail. (*Id.* at 15).

In November 2024,[1] Palmer, together with six other plaintiffs, sued the County under § 1983, alleging claims based on unconstitutional conditions of confinement, failure to train, and failure to supervise. (*Id.*). The plaintiffs alleged that the following customs or practices caused their injuries: (1) overcrowding and understaffing at the Jail; (2) failing to properly observe and monitor detainees; (3) denying detainees adequate and proper medical care; (4) institutionalizing the use of excessive force against detainees; and (5) fostering a culture of violence among the detainees. (*Id.*). Because the plaintiffs' claims arose from seven different incidents that occurred on seven different dates in at least three different Jail facilities and that involved at least seven different individual officers, the court severed the plaintiffs' claims into separate actions. (Docket Entry No. 1).

The County moved to dismiss each plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6). In its motion to dismiss Palmer's claims, the County argues that she failed to state a legally sufficient claim under any theory of municipal liability. (Docket Entry No. 5). Palmer moved to strike the separate motions to dismiss on the ground that they were an improper attempt to avoid the court's page limits for motions. (Docket Entry No. 6). She also filed a substantive response to the motion to dismiss. (Docket Entry No. 9). The County filed a reply. (Docket Entry No. 11).

---

[1]The initial complaint was filed on August 16, 2024. *See Chavez-Sandoval, et al. v. Harris County*, Civil No. H-24-3072 (S.D. Tex.), at Dkt. 1. The amended complaint, which is the live pleading in this case, was filed November 22, 2024. *Id.* at Dkt. 13.

## II.    The Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the plaintiff's complaint to state a claim upon which relief can be granted.  When the court considers a motion under Rule 12(b)(6), "the factual information to which the court addresses its inquiry is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201."  *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).  This includes publicly available judicial documents and other documents attached to the motion to dismiss if they are referred to in the plaintiff's complaint and are central to the claims.  *See Payne v. City of Houston*, Appeal No. 24-20150, 2025 WL 999085, at *1 (5th Cir. Apr. 3, 2025).

In ruling on a motion to dismiss, the court "construes the complaint liberally in favor of the plaintiff," "takes all facts pleaded in the complaint as true," and considers whether "with every doubt resolved on [the plaintiff's] behalf, the complaint states any valid claim for relief."  *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (cleaned up).  But despite this liberal standard, to survive a motion to dismiss under Rule 12(b)(6), the complaint must include specific facts, not conclusory allegations.  *See Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020).  Neither conclusory allegations nor unwarranted deductions of fact are admitted as true for purposes of a motion to dismiss.  *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  The complaint must also include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  If the facts alleged are facially sufficient, "a well-pleaded

4

complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up). But if the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

## III.   Discussion

### A.   Palmer's Motion to Strike

Palmer moves to strike the County's motion to dismiss, arguing that by filing a separate motion as to each plaintiff, the County improperly evaded the court's page limits for motions. (Docket Entry No. 6). The amended complaint in this action is 223 pages long and contains 1,169 paragraphs, many containing allegations relating to plaintiffs other than Kerber. (Docket Entry No. 2). Under these circumstances, the County's separate motions directed to the allegations relating to each plaintiff were not improper. In addition, on December 30, 2024, the court granted the County's unopposed motion for leave to file motions in excess of the page limits. *See Chavez-Sandoval v. Harris County*, Civil No. H-24 3072 (S.D. Tex.), at Dkt. 35. Palmer's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied.

### B.   The County's Motion to Dismiss

The County moves to dismiss Palmer's claims, arguing that she has failed to state a claim against the County under any theory of municipal liability. While municipalities may be held liable under § 1983 for violating a person's constitutional rights, municipalities are not vicariously liable for the unconstitutional actions of their employees. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking relief against a municipal defendant, such as the County, must establish that the allegedly unconstitutional acts are "directly attributable to the municipality through some sort of official action or imprimatur." *Piotrowski v. City of Houston*,

5

237 F.3d 567, 578 (5th Cir. 2001).  In general, this requires the plaintiff to (1) identify an official

policy, (2) that was promulgated by a municipal policymaker, and (3) that was the moving force

behind the violation of a constitutional right.  *See Verastique v. City of Dallas, Tex.,* 106 F.4th 427,

432 (5th Cir.), *cert. denied,* 145 S. Ct 772 (2024) (quoting *Johnson v. Harris County*, 83 F.4th 941,

946 (5th Cir. 2023)).  The factual allegations necessary to sufficiently plead these elements depend

on the nature of the municipal liability claim.  But in all cases, "to get past the pleading stage, a

complaint's description of a policy or custom and its relationship to the underlying constitutional

violation cannot be conclusory; it must contain specific facts."  *Peña v. City of Rio Grande City,*

*Tex.*, 879 F.3d 613, 622 (5th Cir. 2018).

Municipal liability claims against a county based on its policies or practices generally arise

under one of two theories: (1) claims based on the conditions of confinement, or (2) claims based

on an "episodic act or omission."  *See Garza v. City of Donna*, 922 F.3d 626, 632 (5th Cir. 2019).

Claims based on conditions of confinement are "attacks on general conditions, practices, rules, or

restrictions of pretrial confinement."  *Hare v. City of Corinth, Miss.*, 74 F.3d 633, 644 (5th Cir.

1996) (en banc).  Conditions-of-confinement claims generally concern "durable restraints or

impositions on inmates' lives like overcrowding, deprivation of phone or mail privileges, the use

of disciplinary segregation, or excessive heat."  *Garza*, 922 F.3d at 633-34.  Claims based on

episodic acts or omissions generally involve "a particular act or omission of one or more officials"

and "an actor usually is interposed between the detainee and the municipality, such that the

detainee complains first of a particular act of, or omission by, the actor."  *Scott v. Moore*, 114 F.3d

51, 53 (5th Cir. 1997) (en banc).  In general, "conditions-of-confinement claims challenge the

constitutionality of pervasive, systemic policies and customs themselves; episodic-acts-or-

omissions claims challenge the constitutionality of the way in which a policy or custom was

applied by a jail official in a particular instance." *Feliz v. El Paso County*, 441 F. Supp. 3d 488, 497 (W.D. Tex. 2020) (citing *Estate of Henson v. Wichita County, Tex.*, 795 F.3d 456, 466–67 (5th Cir. 2015)).

In her response to the County's motion to dismiss, Palmer contends that she has alleged sufficient facts to state conditions-of-confinement claims based on: (1) the County's failure to adequately observe and monitor detainees; (2) the County's "failure to provide medical classifications," and (3) the systemic understaffing and overcrowding at the Jail. (Docket Entry No. 9, p. 11). Palmer also contends that she has alleged sufficient facts to state claims for failure to train and failure to supervise. (*Id.* at 27-30).

In the alternative, Palmer contends that she has alleged episodic-acts-or-omissions claims based on detention officials' failure to classify Kerber for a high-risk cell assignment and their failure to adequately observe and monitor Kerber to prevent him from self-harm. (Docket Entry No. 9, pp. 25-28). No rule bars a plaintiff from pleading both a conditions-of-confinement claim and an episodic-acts-or-omissions claim. *See Shepherd v. Dallas County, Tex.*, 591 F.3d 445, 452 n.1 (5th Cir. 2009). When a plaintiff does so, the court may evaluate the claims either together or separately. *Id.* The court addresses each type of claim in turn.

### 1.    The Conditions-of-Confinement Claims

Because pretrial detainees have not been convicted of a crime, conditions of confinement that "amount to punishment" are unconstitutional. *Cadena v. El Paso County*, 946 F.3d 717, 727 (5th Cir. 2020) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). Punishment will be inferred "if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless." *Garza*, 922 F.3d at 632 (quoting *Bell*, 441 U.S. at 539). Conditions of confinement that amount to punishment can arise from either an explicit policy or "an unstated or *de facto*

policy, as evidenced by a pattern of acts or omissions sufficiently extended or pervasive, or otherwise typical of extended or pervasive misconduct by [jail] officials." *Shepherd*, 591 F.3d at 452 (quoting *Hare*, 74 F.3d at 645). Because the plaintiff in a conditions-of-confinement claim is challenging a policy or practice, he need not allege that an individual state actor acted knowingly or intentionally. *See Estate of Henson*, 795 F.3d at 463. Instead, to state a legally sufficient conditions-of-confinement claim, the plaintiff must allege facts showing: (1) that a rule, restriction, custom, or practice was extensive or pervasive; (2) that the rule, restriction, custom, or practice was not reasonably related to a legitimate governmental objective; and (3) that the rule, restriction, custom, or practice was the moving force or actual cause of the violation of the detainee's constitutional rights. *See Cadena*, 946 F.3d at 727 (quoting *Duvall v. Dallas County, Tex.*, 631 F.3d 203, 207 (5th Cir. 2011) (per curiam)).

### a.    The Claim for Failing to Observe and Monitor Detainees

Palmer contends that she has stated a conditions-of-confinement claim based on the Jail's alleged policy or practice of failing to adequately observe and monitor detainees. She alleges that Jail officials routinely fail to observe and monitor detainees in the manner and at the intervals required by the Texas Commission on Jail Standards. But the failure to observe and monitor detainees, standing alone, is not a constitutional violation, and a violation of state laws or standards cannot be the sole basis for imposing liability under § 1983. *See Daniels v. Williams*, 474 U.S. 327, 332-33 (1986). Instead, to plead a conditions-of-confinement claim based on a failure to observe and monitor, the plaintiff must show that the detainee had a specific basic human need that could not be met absent periodic observation and monitoring by jail officials and that the jail's pervasive pattern of "gross inattention" to providing for that need actually caused the violation of the detainee's rights. *See, e.g., Shepherd*, 591 F.3d at 454. Under this standard, Palmer was

8

required to allege facts showing that (1) the Jail had an extensive or pervasive custom or practice of failing to observe or monitor detainees; (2) that the custom or practice was not reasonably related to a legitimate governmental objective; and (3) that the custom or practice caused the denial of Kerber's constitutional rights. *See, e.g., Estate of Bonilla ex rel. Bonilla v. Orange County, Tex.,* 982 F.3d 298, 308-09 (5th Cir. 2020); *Duvall*, 631 F.3d at 207.

Palmer's amended complaint contains sufficient facts on each of these elements. She alleges facts that could show that the Jail had an extensive and pervasive custom or practice of failing to observe or monitor its detainees in compliance with the Texas Commission on Jail Standards requirements. The amended complaint alleges numerous incidents of Jail officials failing to timely observe and monitor detainees. (Docket Entry No. 2, pp. 71-73; 77-80; 84-85; 96; 107-08; 110-27; 134; 136-37; 145; 147-48; 152; 155-56, 160-70; 176-78; 180-81). These allegations are supported by multiple noncompliance reports from the Texas Commission on Jail Standards that identify similar deficiencies in the observation and monitoring of detainees. (*Id*. at 48-50, 53-55, 59, 63, 65-67, 69, 71). When considered in total and taken as true, as required at this stage of the litigation, these allegations are sufficient to plead that the County knew of and acquiesced to an extensive and pervasive practice of failing to properly observe and monitor detainees at the Jail. Palmer has also alleged, and the County does not dispute, that there is no legitimate government interest in failing to observe and monitor detainees to ensure that their basic human needs are met.

Palmer has further alleged sufficient facts to show that this pervasive custom or practice actually caused the denial of Kerber's basic human needs. Palmer alleges facts showing that Kerber's act of self-harm was visible to detention officers via closed-circuit cameras. The detention officers assigned to monitor the camera feeds either were not doing so or they actually

9

saw Kerber start to choke himself and deliberately did nothing to render aid.  Palmer also alleges facts showing that at least two detention officers assigned to conduct face-to-face observations of Kerber walked past his cell without doing so.  As a result, Kerber lay on the floor of his cell for almost two hours before anyone attempted to render aid.  By failing to observe and monitor Kerber, the detention officers on duty that evening denied him potentially lifesaving aid.  Because these allegations could show that the failure to render aid unconstitutionally denied Kerber of necessary and lifesaving assistance, they are sufficient to state a conditions-of-confinement claim for failure to observe and monitor.  *See, e.g., Cope v. Cogdill*, 3 F.4th 198, 208 (5th Cir. 2021); *Partridge v. Two Unknown Police Officers*, 791 F.2d 1182, 1185-86 (5th Cir. 1986).

Because Palmer has alleged sufficient facts as to each of the elements of a conditions-of-confinement claim based on a failure to observe and monitor, the County's motion to dismiss this claim is denied.

### b.    The Claim for the Denial of Proper Medical Classification

Palmer also contends that she has stated a conditions-of-confinement claim based on Kerber being denied proper medical classification.  While there is no constitutional right to a "proper medical classification," a pretrial detainee has "the right to be protected from known suicidal tendencies." *Sanchez v. Young County, Tex.*, 956 F.3d 785, 791 (5th Cir. 2020).  To the extent that Palmer contends that Kerber's improper medical classification resulted in him being denied the right to be protected from known suicidal tendencies, the court will consider whether she has stated a conditions-of-confinement claim.

To plead a conditions-of-confinement claim based on the failure to protect from suicidal tendencies, Palmer must allege facts showing that (1) the Jail had an extensive or pervasive custom or practice of failing to properly identify and protect detainees with known suicidal tendencies;

(2) that this custom or practice was not reasonably related to a legitimate governmental objective; and (3) that this custom or practice was the moving cause of Kerber's death. *See, e.g., Feliz*, 441 F. Supp. 3d at 498-99.

Palmer's amended complaint does not meet these standards. Palmer alleges facts concerning numerous incidents of detainees experiencing inadequate or improper care as a result of being placed in a cell inappropriate to their medical and psychological needs. (Docket Entry No. 2, pp. 77-78, 80-81, 84-85, 92-93, 109-13, 115-17, 119-20, 122, 124-26, 139-40, 155-56, 162-69). These allegations are supported by multiple noncompliance reports from the Texas Commission on Jail Standards that identify similar deficiencies in classifying detainees for the purpose of providing appropriate medical and psychological care. (*Id*. at 52-53, 56-57, 59-61, 64). When considered in total and taken as true, as required at this stage of the litigation, these allegations are sufficient to plead the first element of Palmer's claim—that the County knew of and acquiesced to an extensive and pervasive practice of failing to properly evaluate and classify detainees to ensure that their medical and psychological needs would be met. Palmer also alleges sufficient facts to support the second element, that the denial of detainees' medical and psychological needs is not reasonably related to a legitimate governmental objective.

But Palmer does not allege facts showing that the Jail's custom or practice of failing to properly classify detainees for cell assignments was the moving cause of Kerber's death. In the amended complaint, Palmer alleges that Kerber was placed in a single quarantine cell rather than a high-risk cell. But she alleges no facts that could show either that Kerber was a high-risk detainee or that Jail officials knew or should have known that he was at risk of engaging in self-harm. In the absence of such allegations, Palmer has not alleged facts that could show that any alleged custom or practice of improperly classifying detainees was the moving cause of Kerber's death.

In response to the County's motion to dismiss, Palmer alleges for the first time that Kerber was a "known suicide risk." (Docket Entry No. 9, pp. 6, 26). But Palmer still alleges no facts that could show how or why any Jail officials would have known that Kerber was at a high risk for self-harm. And even if she had, these allegations would be legally insufficient because the court may not consider new facts alleged for the first time in a response to a motion to dismiss when ruling on that motion. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) ("Because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint."). Making statements about facts in response to a motion does not plead those facts. These newly presented facts may not be considered to deny an otherwise meritorious motion to dismiss.

Palmer's amended complaint fails to state a conditions-of-confinement claim for the denial of a "proper medical classification." The County's motion to dismiss this claim is granted. While Palmer did not request leave to amend, the court cannot find that amendment would be futile. This claim is dismissed without prejudice.

### c.    The Claim of Overcrowding and Understaffing

Palmer also contends that she has stated a conditions-of-confinement claim based on systemic overcrowding and understaffing at the Jail. This claim fails because Palmer does not allege facts showing that either the alleged overcrowding or understaffing caused Kerber's death.

Subjecting detainees at a county jail to overcrowding or understaffing is not, by itself, a constitutional violation. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A detainee bringing a conditions-of-confinement claim based on overcrowding or understaffing must allege facts showing that those conditions actually caused a constitutional violation which resulted in injury.

Throughout its 223 pages, the amended complaint alleges that every violation of every detainees' constitutional rights resulted in some way from the alleged overcrowding and understaffing at the Jail.  But the amended complaint does not allege facts showing that the alleged overcrowding and understaffing were the moving cause of Kerber's death.  Palmer does not allege that Kerber suffered harm from the mere presence of overcrowding or understaffing at the Jail. Instead, the harm she identifies resulted from Jail officials' alleged failure to properly assign Kerber to a cell and failure to properly observe and monitor him.  Because Palmer does not allege facts that could show that overcrowding and understaffing were the moving cause of Kerber's death, she fails to state a conditions-of-confinement case based on these conditions.

The County's motion to dismiss Palmer's conditions-of-confinement claim based on overcrowding and understaffing is granted.  This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

## 2.    The Episodic-Act-or-Omission Claims

As an alternative to her conditions-of-confinement claims, Palmer contends that she has sufficiently pleaded episodic-acts-or-omissions claims based on the failure to observe and monitor and the failure to properly classify Kerber for a cell assignment.  (Docket Entry No. 9, pp. 25-26).

Unlike a conditions-of-confinement claim, an episodic-acts-or-omissions claim "faults specific jail officials for their acts or omissions."  *Estate of Henson*, 795 F.3d at 463 (quoting *Shepherd*, 591 F.3d at 452).  For liability to attach, "the municipality must cause the constitutional tort, which occurs when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Bolton v. City of Dallas, Tex.,* 541 F.3d 545, 548 (5th Cir. 2008) (per curiam) (quoting *Monell,* 436 U.S. at 694) (cleaned up).  This requires the plaintiff to show "(1) that the municipal

employee violated the pretrial detainee's clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Garza*, 922 F.3d at 633 (quoting *Brumfield* v. *Hollins*, 551 F.3d 322, 331 (5th Cir. 2008)).

In many cases, the element of causation distinguishes a conditions-of-confinement claim from an episodic-acts-or-omissions claim. *See Estate of Henson*, 795 F.3d at 464. Causation turns on whether the plaintiff was harmed by the allegedly unconstitutional conditions themselves or by the actions of a municipal employee. *Id.* The case of *Scott v. Moore*, 114 F.3d 51 (5th Cir. 1997) (en banc), provides an example. The plaintiff in *Scott* sued the city, alleging that an officer sexually assaulted her while she was in pretrial detention. *Id.* at 52. In her conditions-of-confinement claim against the city, she alleged that understaffing at the jail led to the assault. *Id.* In rejecting this claim, the court noted that while Scott alleged that inadequate staffing allowed the incident to occur, the actual harm she alleged was the sexual assault. *Id.* at 53. The court explained:

> In many jail condition cases, the conditions themselves constitute the harm. This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions. Here, however, Scott did not suffer from the mere existence of the alleged inadequate staffing, but only from Moore's specific sexual assaults committed on but one occasion. Consequently, this case does not fit well within the conditions-of-confinement category.

*Id.* at 53-54. The Fifth Circuit has since identified a "rule" that when a particular municipal actor is interposed between the injured party and the municipal defendant, causation does not result from the policy itself and the case is properly treated as one based on an episodic act. *See Garza*, 922 F.3d at 633.

### a.   The Claim for Failure to Observe and Monitor Detainees

Palmer alleges that she has alleged an episodic-acts-or-omissions claim based on the failure to observe and monitor Kerber. As explained above, Palmer has alleged sufficient facts to show

14

that the County had an extensive or pervasive custom or practice of failing to properly observe and monitor detainees to ensure their health and safety. Further, Palmer alleges facts that could show that Kerber was not observed and monitored in compliance with state standards and that this failure to observe and monitor was due to the subjective deliberate indifference of the detention officers on duty that night. These allegations are sufficient to state an episodic-acts-or-omissions claim based on a failure to observe and monitor. The County's motion to dismiss this claim is denied.

### b.     The Claim for the Denial of Proper Medical Classification

Palmer also contends that she has stated an episodic-acts-or-omissions claim for the denial of a proper medical classification in Kerber's cell assignment. As explained above, there is no constitutional right to a "proper classification." To the extent that Palmer is attempting to allege a claim for the denial of the right to be prevented from committing self-harm, she does not allege facts showing that detention officers knew that Kerber posed a substantial risk of engaging in self-harm or that they acted with subjective deliberate indifference to that knowledge in making his cell assignment. And while Palmer arguably includes additional facts in her response to the motion to dismiss, the court cannot consider those new facts when ruling on that motion. *See Dorsey*, 540 F.3d at 338. These newly presented facts may not be considered to deny an otherwise meritorious motion to dismiss.

The County's motion to dismiss Palmer's episodic-acts-or-omissions claim based on a failure to properly classify Kerber for the purpose of his cell assignment is granted. This claim is dismissed without prejudice because the court cannot find that amendment would be futile.

### 3.     The Claim for a Failure to Train

Palmer also contends that the County is liable for failing to adequately train Jail employees. "A failure-to-train action is a type of *Monell* claim." *Hutcheson v. Dallas County, Tex.*, 994 F.3d

477, 482 (5th Cir. 2021). A municipality's failure to train its detention officers and medical staff in constitutional practices and limits "can amount to a policy if there is deliberate indifference to an obvious need for training where citizens are likely to lose their constitutional rights on account of [detention officer] novices." *Peterson v. City of Fort Worth*, 588 F.3d 838, 849 (5th Cir. 2009). To allege a claim for municipal liability on a failure-to-train theory, a plaintiff must allege facts showing that: "(1) the city failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Hutcheson*, 994 F.3d at 482; *see also Edwards v. City of Balch Springs, Tex.*, 70 F.4th 302, 312 (5th Cir. 2023). "[T]he focus must be on [the] adequacy of the training program in relation to the tasks the particular officers must perform." *Valle v. City of Houston*, 613 F.3d 536, 544 (5th Cir. 2010). Because of this focus, the plaintiff must "allege with specificity how a particular training program is defective." *Edwards*, 70 F.4th at 312; *see also Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (a conclusory allegation that officers received deficient training "across the board" is not enough to plead deliberate indifference). The plaintiff must also allege facts showing "a pattern of similar constitutional violations by untrained employees," which would show that the policymaker had notice that the particular course of training is inadequate but failed to respond. *See Porter v. Epps*, 659 F.3d 440, 446-47 (5th Cir. 2011). To allege a pattern, the plaintiff must allege prior incidents that are sufficient in number and similarity to support an inference that the alleged violations result from a systemic lack of training. *See Johnson*, 83 F.4th at 946-47. The plaintiff must also allege facts that could show that the failure to train is so closely related to the alleged injury that it cannot be "attribut[ed] to a

16

particular officer's shortcomings." *Garza*, 922 F.3d at 637 (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 391 (1989)).

Palmer's amended complaint does not meet this standard. The only factual allegation Palmer makes about training is to point to the 2023 report from the Texas Commission on Jail Standards prepared in response to Kerber's death, which found that certain officers had not received training on suicide prevention. (Docket Entry No. 2, p. 60). While some of the other Texas Commission on Jail Standards reports address deficiencies in the classification, observation, and monitoring of detainees, none of those reports identify a lack of training as being the cause of the performance issues. Similarly, while Palmer identifies multiple instances of detention officers failing to comply with the Jail's observation and monitoring requirements, she does not allege facts showing that those deficiencies arose from a lack of training. (*Id.* at 48-50, 53-55, 59). Instead, she points to the Jail's written policy on observing and monitoring detainees, but that policy specifically requires detention officers to observe and monitor detainees in compliance with the Texas Commission on Jail Standards requirements. (*Id.* at 70). Palmer's allegations, taken together, are insufficient to show that the County's training program was deficient.

The crux of Palmer's failure-to-train claim is that if the County had properly trained its detention officers, those officers would have monitored Kerber, responded when he first harmed himself, or found him in time to save his life. But these allegations do not show that Kerber's death was caused by a systemic failure to train rather than to the individual decisions and shortcomings of properly trained detention officers. A "[f]ailure to train cannot be alleged by the simple assertion that an occurrence of the incident proves the need for additional or different training." *Oliveria v. City of Jersey Vill.*, No. 4:21-cv-3564, 2023 WL 7222124, at *4 (S.D. Tex. Nov. 2, 2023) (quoting *Garcia v. Harris County*, No. 4:22-cv-198, 2022 WL 2230469, at *2 (S.D.

Tex. June 2, 2022)).  Further, "prov[ing] that an injury or accident could have been avoided if an [employee] had had better or more training, sufficient to equip him to avoid the particular injury-causing conduct" will not suffice to prove a failure to train.  *Connick v. Thompson*, 563 U.S. 51, 68 (2011) (quoting *City of Canton*, 489 U.S. at 391).

Palmer fails to allege facts that could show that any alleged policy or practice of failing to train detention officers on how to classify, observe, and monitor detainees caused the violation of Kerber's constitutional rights.  Her allegations are legally insufficient to state a claim for failure to train.  Palmer's claim based on an alleged failure to train is dismissed, without prejudice because the court cannot find that amendment would be futile.

### 4.    The Claim for a Failure to Supervise

Palmer also alleges that the County is liable for failing to supervise Jail employees.  To state a claim for municipal liability on a theory of a failure to supervise, the plaintiff must allege facts showing that (1) the city failed to supervise the officers involved; (2) there is a causal connection between the failure to supervise and the violation of the plaintiff's rights; and (3) it was, or should have been, obvious to municipal policymakers that the "highly predictable consequence" of not supervising the officers was that the officers would violate the plaintiffs' constitutional rights.  *See, e.g., Peterson*, 588 F.3d at 850; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 453 (5th Cir. 1994) (en banc).  As with a claim for failure to train, a plaintiff claiming a failure to supervise must allege facts showing a pattern of prior similar violations that would make the need for more or different supervision "obvious."  *City of Canton,* 489 U.S. at 390.  "Plaintiffs must show that in light of the duties assigned to specific officers or employees the need for more or different [supervision] is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been

18

deliberately indifferent to the need." *Murray v. LeBlanc*, 629 F. Supp. 3d 437, 457 (M.D. La. 2022) (cleaned up).

Palmer's claim for failure to supervise does not meet this standard. Palmer alleges no facts that could show that the County did not supervise its detention officers. She alleges no facts showing that the need for more or different supervision of the detention officers on duty on the night of Kerber's death was so obvious that it could reasonably be said that the County was deliberately indifferent to the need for more or better supervision. In short, Palmer alleges no facts showing that deficiencies in the County's supervision plan caused the alleged violation of Kerber's constitutional rights.

Palmer's allegations are legally insufficient to state a claim for failure to supervise. Her failure-to-supervise claim is dismissed, without prejudice because the court cannot find that amendment would be futile.

## IV.    Conclusion

Palmer's motion to strike the County's motion to dismiss, (Docket Entry No. 6), is denied. The County's motion to dismiss, (Docket Entry No. 5), is granted in part and denied in part. Palmer must file any motion seeking leave to file a second amended complaint, with the proposed second amended complaint attached, no later than **October 15, 2025**.

SIGNED on September 5, 2025, at Houston, Texas.

_____
Lee H. Rosenthal
Senior United States District Judge